UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
LIBERTY MUTUAL FIRE INSURANCE COMPANY,

                Plaintiff,                Civil Action No.

-against-

JDS CONSTRUCTION GROUP LLC, JDS      **COMPLAINT FOR**
CONSTRUCTION SERVICES LLC, 111 WEST      **SPECIFIC PERFORMANCE**
57TH DEVELOPER LLC, PMG WEST 57TH STREET
LLC, 111 CONSTRUCTION MANAGER LLC, and
111 WEST 57TH PROPERTY OWNER LLC,

                Defendants.
---------------------------------------------------------------------x

**M A D A M S/S I R S:**

Plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty Mutual"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendants JDS CONSTRUCTION GROUP LLC ("JDS Construction"), JDS CONSTRUCTION SERVICES LLC ("JDS Services"), 111 WEST 57th DEVELOPER LLC ("Developer"), PMG WEST 57TH STREET LLC ("PMG"), 111 CONSTRUCTION MANAGER LLC ("Construction Manager"), and 111 WEST 57TH PROPERTY OWNER LLC ("Property Owner"), alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

2. At all times hereinafter mentioned, Liberty Mutual was, and still is, a

stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

3. At all times hereinafter mentioned, Liberty Mutual was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4. Upon information and belief, at all times hereinafter mentioned, JDS Construction was, and still is, a limited liability company organized under the laws of the State of New York, with its principal place of business located at 104 Fifth Avenue, 9th Floor, New York, New York 10011-6901.

5. Upon information and belief, JDS Construction does not have any members domiciled in either Wisconsin or Massachusetts.

6. Upon information and belief, at all times hereinafter mentioned, JDS Construction was, and still is, engaged in the construction business.

7. Upon information and belief, at all times hereinafter mentioned, JDS Services was, and still is, a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 104 Fifth Avenue, 9th Floor, New York, New York 10011-6901.

8. Upon information and belief, JDS Services does not have any members domiciled in either Wisconsin or Massachusetts.

9. Upon information and belief, at all times hereinafter mentioned, JDS Services was, and still is, engaged in the construction business.

10. Upon information and belief, at all times hereinafter mentioned, Developer was, and still is, a limited liability company organized under the laws of the State

of Delaware, with its principal place of business located at 104 Fifth Avenue, 9th Floor, New York, New York 10011-6901.

11. Upon information and belief, Developer does not have any members domiciled in either Wisconsin or Massachusetts.

12. Upon information and belief, at all times hereinafter mentioned, Developer was, and still is, engaged in the real estate business.

13. Upon information and belief, at all times hereinafter mentioned, PMG was, and still is, a limited liability company organized under the laws of the State of New York, with its principal place of business located at 104 Fifth Avenue, 9th Floor, New York, New York 10011-6901.

14. Upon information and belief, PMG does not have any members domiciled in either Wisconsin or Massachusetts.

15. Upon information and belief, at all times hereinafter mentioned, PMG was, and still is, engaged in the real estate business.

16. Upon information and belief, at all times hereinafter mentioned, Construction Manager was, and still is, a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 104 Fifth Avenue, 9th Floor, New York, New York 10011-6901.

17. Upon information and belief, Construction Manager does not have any members domiciled in either Wisconsin or Massachusetts.

18. Upon information and belief, at all times hereinafter mentioned, Construction Manager was, and still is, engaged in the real estate business.

19. Upon information and belief, at all times hereinafter mentioned, Property Owner was, and still is, a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 104 Fifth Avenue, 9th Floor, New York, New York 10011-6901.

20. Upon information and belief, Property Owner does not have any members domiciled in either Wisconsin or Massachusetts.

21. Upon information and belief, at all times hereinafter mentioned, Property Owner was, and still is, engaged in the real estate business.

22. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391; the defendants all reside in the Southern District of New York.

## SUBSTANTIVE ALLEGATIONS

**A.   The CGL Policy**

23. On or about August 25, 2014, at the special insistence and request of JDS Construction, Liberty Mutual issued a Commercial General Liability policy, No. TB2-621-094668-024, with a policy period from August 25, 2014 to August 25, 2017, to JDS Construction as the first Named Insured (the "CGL Policy").

24. The CGL Policy was issued as part of the JDS Construction CCIP regarding the project located at 105-111 West 57th Street, New York, New York.

25. Each of the defendants are members of the JDS Construction CCIP.

26. At the special insistence and request of JDS Construction, an endorsement was issued changing the policy period of the CGL Policy to be from August 25, 2014 to January 10, 2021.

4

27. At the special insistence and request of JDS Construction, pursuant to endorsement, Developer was added to the CGL Policy as a Named Insured.

28. At the special insistence and request of JDS Construction, pursuant to endorsement, JDS Services was added to the CGL Policy as a Named Insured.

29. At the special insistence and request of JDS Construction, pursuant to endorsement, 111 West 57th Partners, LLC was added to the CGL Policy as a Named Insured.

30. At the special insistence and request of JDS Construction, pursuant to endorsement, Construction Manager was added to the CGL Policy as a Named Insured.

31. At the special insistence and request of JDS Construction, pursuant to endorsement, Property Owner was added to the CGL Policy as a Named Insured.

32. At the special insistence and request of JDS Construction, pursuant to endorsement, JDS Development LLC was added to the CGL Policy as a Named Insured.

33. At the special insistence and request of JDS Construction, pursuant to endorsement, 111 West 57th Mezz I LLC and 111 West 57th Holdings LLC were added to the CGL Policy as Named Insureds.

34. At the special insistence and request of JDS Construction, pursuant to endorsement, JDS Development Group, LLC, 111 West 57th JDS LLC, PMG, 111 West 57th MM LLC, 111 West 57th Manager Funding LLC, 111 West 57th Manager LLC, 111 West 57th Sponsor LLC, 111 West 57th Investment LLC, and 111 West 57th JV LLC were added to the CGL Policy as Named Insureds.

35. At the special insistence and request of JDS Construction, pursuant to

endorsement, MRC 111 W57th 2 LLC and MRC 111 W57th LLC were added to the CGL Policy as Named Insureds.

36. Pursuant to an endorsement entitled "Deductible – Damages and Supplementary Payments Damages Within the Deductible Erode the Policy Limits" (the Deductible Endorsement"), the CGL Policy is subject to a Deductible Amount of $3 million for "Bodily Injury and Property Damage Liability, Personal and Advertising Injury Liability, Medical Payments and Supplementary Payments."

37. The CGL Policy defines the term "you" as meaning and referring to JDS Construction.

38. The Deductible Endorsement provides, in relevant part, as follows:

A.  DEDUCTIBLE

DAMAGES AND SUPPLEMENTARY PAYMENTS
ERODE DEDUCTIBLE

You are responsible, up to the Deductible Amount shown in the Schedule, for the total of:

1. All damages, including amounts paid in settlement of a claim or "suit" and medical payments, plus

2. All SUPPLEMENTARY PAYMENTS

because of all "bodily injury" and "property damage" under Coverage A that results from any one "occurrence", all "personal and advertising injury" under Coverage B sustained by any one person or organization and all "bodily injury" sustained by one person under Coverage C.

We are responsible for those amounts of damages and medical expenses to which this insurance applies (subject to the applicable limits of insurance) and

6

SUPPLEMENTARY PAYMENTS that exceed the Deductible Amount shown in the Schedule.

We have the right but not the duty to advance any part or all of these amounts. Exercise of our right to advance such amount shall not create any obligations or be construed as a waiver or estoppel of our rights under this policy.

**B.     The WC Policies**

39.     On or about August 25, 2014, at the special insistence and request of JDS Construction, Liberty Mutual issued a Workers Compensation and Employers Liability Insurance Company, No. WA2-62D-094668-014, with a policy period from August 25, 2014 to August 25, 2017, to JDS Construction as the first Named Insured (the "2014-2017 WC Policy").

40.     The 2014-2017-2020 WC Policy was issued in connection with a wrap-up project known as the JDS Construction CCIP.

41.     At the special insistence and request of JDS Construction, pursuant to an endorsement, Developer was added to the 2014-2017 WC Policy as a Named Insured.

42.     At the special insistence and request of JDS Construction, pursuant to an endorsement, 111 West 57th Control LLC and PMG were added to the 2014-2017 WC Policy as Named Insureds.

43.     At the special insistence and request of JDS Construction, pursuant to endorsements, Construction Manager and JDS Services were added to the 2014-2017 WC Policy as Named Insureds.

44.     Pursuant to a Deducible Endorsement, the 2014-2017 WC Policy is

7

subject to a Deductible Amount of $750,000 for each occurrence for Bodily Injury By Accident and $750,000 for each claim for Bodily Injury By Disease.

45. On or about August 25, 2017, at the special insistence and request of JDS Construction, Liberty Mutual issued a Workers Compensation and Employers Liability Insurance Company, No. WA2-62D-094668-237, with a policy period from August 25, 2017 to May 10, 2019, to JDS Construction as the first Named Insured (the "2017-2020 WC Policy").

46. At the special insistence and request of JDS Construction, pursuant to endorsements, the policy period of the 2017-2020 WC Policy was extended until August 25, 2020.

47. The 2017-2020 WC Policy was issued in connection with a wrap-up project known as the JDS Construction CCIP.

48. The 2017-2020 WC Policy is a Renewal of the 2014-2017 WC Policy.

49. The Named Insureds on the 2017-2020 WC Policy include JDS Construction, Developer, PMG, Construction Manager, and JDS Services.

50. Pursuant to a Deducible Endorsement, the 2017-2020 WC Policy is subject to a Deductible Amount of $750,000 for each occurrence for Bodily Injury By Accident and $750,000 for each claim for Bodily Injury By Disease.

51. On or about August 25, 2020, at the special insistence and request of JDS Construction, Liberty Mutual issued a Workers Compensation and Employers Liability Insurance Company, No. WA2-62D-094668-780, with a policy period from

August 25, 2020 to August 25, 2021, to JDS Construction as the first Named Insured (the "2020-2021 WC Policy").

52. The 2020-2021 WC Policy was issued in connection with a wrap-up project known as the JDS Construction CCIP.

53. The 2020-2021 WC Policy is a Renewal of the 2017-2020 WC Policy.

54. The Named Insureds on the 2020-2021 WC Policy include JDS Construction, Developer, PMG, Construction Manager, and JDS Services.

55. Pursuant to a Deducible Endorsement, the 2020-2021 WC Policy is subject to a Deductible Amount of $750,000 for each occurrence for Bodily Injury By Accident and $750,000 for each claim for Bodily Injury By Disease.

## C.  The Pledge Agreement

56. On or about August 25, 2014, to secure payment of its deductible obligations under the CGL Policy, the 2014-2017 WC Policy, the 2017-2020 WC Policy, and the 2020-2021 WC Policy (collectively, "the Deductible Policies"), and in connection with the issuance and anticipated issuance of the Deductible Policies, defendants, collectively known as "JDS Construction CCIP", and Liberty Mutual entered into a Pledge and Security Agreement For Guarantee Of Deductibles and/or Loss Limit Reimbursement #8344 (the "Pledge Agreement"). A copy of the Pledge Agreement is annexed hereto as Exhibit "A".

57. The Pledge Agreement was and is an essential part of the insurance arrangement Liberty Mutual entered into with defendants; its intent was to avoid any

collectability risk associated with the deductibles under the Deductible Policies for Liberty Mutual.

58. The Pledge Agreement provides, in its preamble, as follows:

This Pledge and Security Agreement for Guarantee of Deductible and / or Loss Limit Reimbursement, ("Agreement"), is made and entered into as of August 25, 2014 by and between Liberty Mutual, as defined in ¶ 2 below, to secure all of Policyholder's obligations to Liberty Mutual arising out of or in connection with: (i) any and all the insurance policies listed below; (ii) any and all renewals, rewrites thereof and (iii) an policies which are written by Liberty Mutual for Policy Holder during the term of this Agreement (singularly the "Insurance Policy"; collectively the "Insurance Policies".)

59. The Deductible Policies are the policies defined as the "Insurance Policies" in the Pledge Agreement.

60. The definition of the term "Policyholder" in the Pledge Agreement includes all defendants.

61. The Pledge Agreement defines the term "Policyholder" as follows:

**2. Policyholder.** The term "Policyholder" as used in this Agreement shall mean JDS Construction CCIP, with its principal place of business at 104 5th Avenue, Ninth Floor, New York, NY 10011 and shall include all those listed on any of the above Insurance Policies as a "named insured."

62. The Pledge Agreement provides, in relevant part, as follows:

**7. Minimum Value of Collateral; Additional Collateral.**
At the inception of this Agreement Policyholder shall provide Liberty Mutual with cash in an amount equal to $2,062,500 of Liberty Mutual's estimate of the dollar amount of unpaid claims for which Policyholder may potentially be liable ("Required Balance") as listed on the attached schedule

("Schedule".) Thereafter Policyholder shall provide the balance of the Required Balance in installments listed below:

| | |
|---|---|
| 11/25/14 | $2,062,500 |
| 2/25/15 | $2,062,500 |
| 5/25/15 | $2,062,500 |
| 8/25/15 | $2,062,500 |
| 11/25/15 | $2,062,500 |
| 2/25/16 | $2,062,500 |
| 5/25/16 | $2,062,500 |

Liberty Mutual will recalculate the Required Balance to be held in the Pre-Funded Deductible Program and review the type of security being held as of: (i) the recalculation dates indicated in ¶ 8; (ii) any date that the actual balance held in the Pre-Funded Deductible Program falls below the minimum balance indicated on the most recent Schedule and (iii) on such dates as Liberty Mutual may determine in its sole and absolute discretion.

The Required Balance shall be recalculated using the method described in ¶ 8 below. Upon recalculation of the Required Balance, Liberty will issue an updated Schedule showing the Required Balance, the minimum balance and the type of security required. If the Required Balance shown on the updated Schedule is greater than the amount then held in the Pre-Funded Deductible Program, Policyholder shall within thirty (30) days of its receipt of the updated Schedule, deposit additional cash into the Pre-Funded Deductible Program so that the amount in such Pre-Funded Deductible Program equals the Required Balance. Should policyholder not deposit the additional cash necessary within said thirty (30) day period, then, in addition to all other rights and remedies available to Liberty Mutual hereunder, under the policies, or at law or in equity, Liberty Mutual shall be entitled to receive a late payment charge on the deposit amount by Policyholder computed at a rate of Prime Rate (as published in the Wall Street Journal) plus 1% per annum on the overdue amount, for actual days elapsed from the date due until deposited. Such late payment charges shall be included in "Obligations" as defined hereunder. If the Required Balance shown on the updated Schedule indicates that the Required Balance is less than the amount then held in the Pre-Funded Deductible

Program, Policyholder may request that any excess cash be returned.

The Policyholder's duty to maintain cash in the Pre-Funded Deductible Program, (or a letter of credit pursuant to ¶12 below), in an amount not less than the minimum balance set forth on the most recent Schedule shall continue until the Policyholder has paid or liquidated all of its Obligations.

63. Regarding the calculation and definition of the Required Balance, the Pledge Agreement provides, in relevant part, as follows:

> **8. Required Balance.** For purposes of this Agreement the Required Balance shall equal the incurred ratable losses developed using the development factors below subject to the deductible aggregate or maximum (if applicable) minus the paid ratable losses. If the date of recalculation is not a date scheduled below, the loss development factor listed for the next scheduled recalculation date following the date of recalculation will be used to develop incurred ratable losses. For the purposes of this Agreement "ratable losses" shall mean allocated loss adjustment expenses and all loss amounts Liberty Mutual pays pursuant to the terms of the Insurance Policies plus all amounts that Liberty Mutual, in its sole and absolute discretion, estimates that Liberty Mutual will pay for losses within the applicable "Retention" shown in the Large Risk Alternative Rating Option attached to the Insurance Policies.
>
> \*\*\*
>
> We will review the Pre-Funded Deductible Program periodically and may amend the required balance, minimum, or type of security using customary business practices, notwithstanding the schedule. You agree to provide such additional funding for the Pre-Funded Deductible Program or other security as specified in the Guarantee. Security for the Pre-Funded Deductible Program will be required until you have paid or liquidated all obligations. In the event of a conflict between the terms set forth herein and those set forth in the Guarantee the terms set forth in the Guarantee shall prevail. If additional funding or collateral is required, it will be due in 30 days and,

if not provided, shall entitle Liberty Mutual to cancel coverage and/or stop enrollments.

64. The Pledge Agreement incorporates by reference Appendix A, which is part of the Pledge Agreement.

65. Appendix A provides, in relevant part, as follows:

**Expenses.** The Policyholder will pay to Liberty Mutual upon demand, any and all reasonable expenses, including, without limitation, reasonable legal fees and expenses, and the fees and expenses of any experts and agents, which Liberty Mutual may incur in connection with (a) the exercise or enforcement of any of the rights or remedies of Liberty Mutual hereunder, and/or (b) the failure by Policyholder to perform or observe any of the provisions hereof. The payment of such expenses shall be Obligations hereunder.

\*\*\*

**Waiver of Trial by Jury.** Policyholder and Liberty Mutual hereby waive any right to a trial by jury in any action or proceeding to enforce or defend any rights under this Agreement or under any agreement instrument or document delivered, or which may in the future be delivered, in connection herewith and agree that any such action or proceeding shall be tried before a court and not before a jury.

### AS AND FOR A FIRST CLAIM FOR RELIEF

66. Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" though "65" of this Complaint as if more fully set forth herein.

67. On or about November 12, 2020, pursuant to paragraphs 7 and 8 of the Pledge Agreement, Liberty Mutual recalculated the Required Balance to be held in the Pre-Funded Deductible Program.

68. Pursuant to paragraph 7 of the Pledge Agreement, Liberty Mutual issued an updated Schedule to defendants, showing a Required Balance of $16,963,132.

69. Pursuant to paragraph 7 of the Pledge Agreement, defendants were required to deposit additional cash into the Pre-Funded Deductible Program so that the amount in such Pre-Funded Deductible Program equals the Required Balance.

70. Pursuant to paragraph 7 of the Pledge Agreement, defendants were obligate to make any necessary deposit by December 12, 2020.

71. Defendants failed and refused to deposit the necessary funds into the Pre-Funded Deductible Program with Liberty Mutual to bring their deposited cash up to the Required Balance.

72. As of February 24, 2021, defendants maintained a case balance with Liberty Mutual in the Pre-Funded Deductible Program of $13,089,840.63, leaving a shortfall of $3,873,291.37.

73. Although duly requested, defendants failed and refused to deposit funds with Liberty Mutual to rectify the shortfall of security they are supposed to provide.

74. As a result of defendants' breach of its obligations to maintain the Required Balance, Liberty Mutual will be irreparably harmed, as it is under-secured in accordance with its rights under the Pledge Agreement.

75. As a result of defendants' failure and refusal to provide the security agreed to pursuant to the Pledge Agreement, Liberty Mutual is entitled to specific performance of defendants' obligations and an Order requiring defendants to deposit the requisite security with Liberty Mutual into the Pre-Funded Deductible Program.

76. Liberty Mutual has no adequate remedy at law, and any recoverable damages would not provide the equivalent of performance.

77. Liberty Mutual is entitled to recovery of attorneys' fees and other costs incurred as a result of having to enforce its rights under the Pledge Agreement.

**WHEREFORE**, plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY demands judgment against defendants JDS CONSTRUCTION GROUP LLC, JDS CONSTRUCTION SERVICES LLC, 111 WEST 57th DEVELOPER LLC, PMG WEST 57TH STREET LLC, 111 CONSTRUCTION MANAGER LLC, and 111 WEST 57TH PROPERTY OWNER declaring and determining that plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY is entitled to specific performance of the Pledge Agreement and ordering defendants to deposit additional cash collateral with plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY into the Pre-Funded Deductible Program to bring the collateral balance up to the Required Balance of $16,963,132, awarding plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY recovery of its attorneys' fees and other costs incurred in enforcing its rights under the Pledge Agreement, and granting plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY the costs and

disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
       March 5, 2021

                              Yours, etc.,

                              JAFFE & ASHER LLP

                              By:_____
                                  Marshall T. Potashner, Esq.
                              Attorneys for Plaintiff
                              LIBERTY MUTUAL FIRE INSURANCE COMPANY
                              445 Hamilton Avenue, Suite 405
                              White Plains, New York 10601
                              (212) 687-3000